## SUPREME COURT.

JESSE EGERT, survivor, &c., agt. JAMES C. WICKER, impleaded with JOHN BOYER.

The 173d section of the Code, extends the power of the court, to order an amendment after judgment, by conforming the pleadings to the facts proved; but this is subject to two important qualifications:

1st. It must be in furtherance of justice; and

2d. It can only be allowed when the amendment does not change substantially the claim or defence.

Where the application of the plaintiff to amend his complaint, was made after all the testimony had been taken, the cause brought to a final hearing, elaborately argued upon both sides on the merits, and a decision made against him, alleging that the variance between the complaint and the proofs, which the court held fatal, should be disregarded, and the pleading be made to conform to the facts proved,

*Held*, 1st. That the application came *too late*. It was more than two years since all the proofs were taken in the cause, and the defendant's principal witness had, in the mean time, died. Besides, the plaintiff, after the proofs were taken, must have been fully apprised of the defect in his pleading; but he not only made no application to amend, but repudiated the necessity of any, until the result of the suit showed the fatal infirmity of his pleading.

2d. That the amendment could not be allowed under sections 169 and 170, because those sections obviously contemplate a case where the alleged variance has been discovered, or is developed on the trial or hearing, at which time, the relief in a case to which it is appropriate, may at once be given, and the trial thereafter proceed upon the amended pleadings.

Besides, those sections are very materially qualified by § 171, which provides that where the allegation to which the proof is directed, is unproved, not in some particular or particulars only, but in *its entire scope and meaning*, it shall not be deemed a case of variance, but a *failure of proof*. *Held*, that in this case, the allegations of the complaint were unproved in their entire scope and meaning, so as to constitute a failure of proof. And,

3d. The proposed amendments would substantially change the whole scope and character of the claim, making it, to all intents and purposes, a new and independent action, requiring a new line of defence, and demanding a widely extended examination of witnesses.

*At Chambers, Dec.,* 1854.

THIS is an application to amend the complaint after all the testimony had been taken, the cause brought to a final hearing, elaborately argued upon both sides upon the merits, and a de-

cision made in the case against the plaintiff.   The affidavits
and papers show that the suit was commenced in the month of
February, 1852.   That, at the same time, the defendant Wicker
was under arrest upon a charge, preferred against him by the
plaintiff in this suit and his partner Thurber, of putting his
property out of his hands for the purpose of defrauding his
creditors ; that an examination was had for several days, before
the recorder of the city of Utica, upon that charge, which was
attended by the counsel of the plaintiff in this suit ; and the co-
defendant and witness Boyer, whose testimony is almost wholly
relied on to sustain this action, underwent a long and searching
examination, developing all the essential facts which were sub-
sequently given in evidence by him, on his examination as a
witness in this suit.   The answer was subsequently put in, and
in June, 1852, all the proofs were taken on both sides before a
referee, agreed upon for that purpose.   The proofs having
been closed, the cause was noticed for hearing on the plead-
ings and proofs, at the fall circuit, in 1852, at each circuit
during the year 1853, and again at the spring circuit of 1854,
and finally brought to a hearing in August, 1854, and argued
and decided in that month.   The plaintiff now asks to amend
his complaint.

BENEDICT & GRIDLEY, *for plaintiff.*

F. KERNAN, *for defendant.*

BACON, Justice.   The case made by the complaint was sub-
stantially this : that the defendant Wicker conveyed the prop-
erty, which is the subject of the controversy here, to his co-de-
fendant Boyer, and gave him a good title ; that the plaintiffs
purchased of Boyer, and advanced the purchase money to him,
*relying wholly* upon his representation that the property was
entirely free from incumbrance ; that, in point of fact, Boyer's
representation was false, and that he had previously executed
a mortgage to Wicker on the premises, for a large amount,
which was without consideration, and which was to be used
only in case the property could not be sold, and then only with

the intent to delay, hinder and defraud the *creditors* of said Wicker; that the purchase by the plaintiffs was made on the 10th of February, and it was not ascertained until the 11th, that the mortgage had been left for record, at the clerk's office, on the 9th of February; that the said mortgage was only to be used by Boyer, for the purpose of assisting Wicker in delaying and defrauding his creditors, and that plaintiff and his partner were creditors of Wicker, and the mortgage therefore was void as against them and their title.

The plaintiff, in the amendments he now desires to have made, asks to change the entire gravamen and essence of the complaint, by inserting, in the first place, an averment that the deed from Wicker to Boyer was made with a view to delay, hinder and defraud the creditors of Wicker, thus attacking the very conveyance which was originally affirmed, and under which he derived title. He asks, furthermore, to be allowed to allege that, by a fraudulent arrangement between Boyer and Wicker, the mortgage was not to be placed on record until after the deed should be recorded, and the negotiations for a sale of the property had so far progressed, that it would be too late to search the records; whereas, in the original complaint, there is no allegation that Wicker had any agency whatever in withholding the mortgage from the record, and the averment is, that it was only to be used in case the property could not be sold. The complaint, as it now stands, states the purchase of plaintiffs to have been made from Boyer exclusively, induced by his representations, and relying wholly upon them; and another amendment now asked is, that the complaint may be allowed to allege that Boyer was only the agent of Wicker, acting in a fraudulent combination with him, and that the plaintiffs regarded him as acting for, and as the agent of Wicker, though nominally for himself; and, finally, to be allowed to charge that the mortgage was made to delay, hinder and defraud the *purchaser* of said premises, by placing it on record after it was too late to ascertain, from an examination of the record, the existence of the mortgage.

Such is the aspect the case will present, if the proposed

Egert agt. Wicker.

amendments are allowed. It is conceded by this application, and was affirmed on the argument, that the case as proposed to be made by the amendments, is the only one which the evidence tends to sustain; and, in the decision of the cause, while intimating a strong doubt upon the essential merits of the case, I put the decision mainly on the ground that there was a fatal variance between the complaint and the proofs. The plaintiff's counsel now insists that the variance should be disregarded, and the pleading be made to conform to the facts proved: and that is the object of this motion. Is he entitled to his relief? I think not, for several reasons:

I. The application comes entirely too late. It is more than two years since all the proofs were taken in the cause, and in the mean time, the principal witness Boyer, and who, it is very obvious, the defendant's counsel, as the affidavit shows, would desire to subject to a further examination, is dead. After the proofs were taken, the plaintiff's counsel must have been fully apprised of the defect in their pleadings, but the cause is noticed for repeated hearings, and it is finally brought to argument, and when the defendant's counsel urges the difficulty under which the case labors, the counsel for plaintiff insists that the complaint is abundantly sufficient to let in the proof; or, in other words, that the evidence sustains the complaint, and not only does not ask for any amendment, but repudiates the necessity of any. It is only sought when the result of the suit shows the fatal infirmity of the pleading. I know the Code is liberal in its provisions on the subject of amendments, and the courts have generally been liberal in applying them; but I am not aware of any case where amendments, of the sweeping and radical character of those asked for in this case, have been allowed after the hearing and decision of a cause, and after judgment has substantially been given.

II. The plaintiff is not entitled to relief under the 169th and 170th sections of the Code. These sections provide that no variance between the allegations of a pleading, and the proof, shall be material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defence upon

the merits, which fact shall be proved to the satisfaction of the court, when an amendment may be ordered upon such terms as shall be just. When the variance is not material, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs. The language of these sections, it seems to me, obviously contemplates a case where the alleged variance has been discovered, or is developed on the trial or hearing, at which time the relief in a case to which it is appropriate, may at once be given, and the trial thereafter proceed upon the amended pleadings; and, in practice under these sections, I believe no amendment has been allowed at a later stage of the cause. But these sections are very materially qualified by the 171st section, which immediately follows, and provides that where the allegation to which the proof is directed, is unproved, not in some particular or particulars only, but in *its entire scope and meaning*; it shall not be deemed a case of variance, but a *failure of proof*. In this case, if the allegations of the complaint were not unproved in their entire scope and meaning, so as to constitute a failure of proof, then it seems to me it is impossible to present such a case, and the 171st section may as well be expunged from the Code. A glance at the complaint and the proposed amendments, conclusively shows, that the evidence which would sustain the latter, would but faintly approach towards the proof of the former. It is plainly, therefore, the case of a failure of proof, in respect to which the party is not entitled to any relief under the preceding sections. The case of *Gunter* agt. *Catlin*, recently decided in the court of appeals, which was cited on the argument, where an amendment was allowed, was a case where the defence of usury was set up, but defectively stated, not in respect to the main fact of the usury, but to the particulars and details of the transaction; and therefore relief was properly given under the 169th section. In the case of *Bates* agt. *Graham*, *also*, (1 *Kern.* 237,) the defective allegation was supplied by an averment in the answer; and, both parties having tried the issue as thus presented under the whole pleadings, and both maintained the legal validity of the assignment,

which was an essential point in the case, the court properly held that the amendment should have been allowed upon the trial.

III. The 173d section of the Code extends the power of the court, to order an amendment, even after judgment, by conforming the pleadings to the facts proved, but this is subject to two important qualifications : 1st. It must be in furtherance of justice ; and 2d. It can only be allowed when the amendment does not change substantially the claim or defence. We have seen that the amendments here proposed, would substantially and radically change the whole scope and character of the claim, making it, to all intents and purposes, a new and independent action, requiring a new line of defence, and demanding a widely extended examination of witnesses.

In deciding the cause, I expressed great doubts upon the merits, and declared in substance, that it would be very unsafe, were the case otherwise free from difficulty, to determine the rights of the parties upon the unsupported testimony of a witness who, by his own confession, was the most active and guilty party to the alleged fraud, and who presented himself with neither external nor intrinsic claims to credibility. Were the amendments to be allowed, and the case again before me, freed from the difficulties which the pleadings present, I should have great hesitation in coming to a decision favorable to the plaintiff. The advancement of justice, therefore, does not by any means imperatively call for the interposition of that power of the court which, it is admitted, is wholly discretionary.

The motion must be denied, with $10 costs.